*Municipal Court of the City of Boston*
No. 195687

HOME CARPET CLEANING CO., INC.

*v.*

HENRY BAKER and
LIBERTY MUTUAL INS. CO.

Argued: Apr. 28, 1972 - Decided: May 10, 1972

*Present:* Adlow, C.J., Gillen, J.
Case tried to *Elam, J.*

**Adlow, C.J.** Action of contract to recover for the cleaning, repair, and replacement of rugs damaged by reason of the bursting of a hot water pipe. In this action Justice Foster disqualified himself from participation and had no part in the determination. This opinion represents the judgment of the two other panelists who constitute a majority of the court.

*There was evidence that* on the 30th day of December 1966, a hot water pipe burst in the apartment building known as the Jamaicaway Tower, located in the Jamaica Plain section of Boston. As a result of the consequent flooding, damage was done in the apartment of Dr. Baker, a tenant in the Jamaicaway Tower. There was damage to the property of other tenants in the same building as a result of the same mishap.

On *January 13, 1967,* Cummings Giardino, an officer of the Home Carpet Cleaning Co., Inc., acting at the request of a representative of the Liberty Mutual Insurance Company, made a survey of the damage suffered by all the tenants in the Jamaicaway Tower. After examining the Baker apartment, Giardino arranged to remove the damaged rugs to see if they could be satisfactorily cleaned. In the first week in March three small oriental rugs and a large broadloom rug were returned. Because the bedroom rug was too badly damaged it was never returned. Mr. Giardino brought samples of various broadloom patterns for replacement of the bedroom rug and Dr. Baker made a selection from one

of the samples. This new bedroom rug was installed by the plaintiff.

*There was evidence that* Giardino acted as an appraiser of the damage for the Liberty Mutual Insurance Company, and submitted a bill for the appraisal of the damages in the Baker apartment in the amount of $35.00. This was later paid. There is much in this report to obscure and confuse the issue. Many conflicting versions of the facts have been included which are hardly material. Much that is material and relevant has been hidden away in the details of the exhibits annexed to the report and which are a material part of it. Fortunately, these facts can be ascertained easily, as will appear presently.

In the first place, we should note that the Home Carpet Cleaning Company, by letter dated August 8, 1967, billed the Liberty Mutual Insurance Company for cleaning and repair work done for six tenants of the Jamaicaway Tower as a result of the flooding of December 30, 1966. Of these six claims five were minor in extent, varying from ten dollars to sixty-five dollars. In the case of Dr. Baker, however, the charges for repairs amounted to $837.43, not including the charge for the original appraisal of damage.

In the second place, it is apparent from the exhibits that Dr. Baker had a Homeowners Policy with the Boston Insurance Company covering his own apartment. According to the

proof of loss filed by Dr. Baker with the Boston Insurance Company, he declared his loss to be $800.00, and he was paid this amount. Upon settling his claim with the Boston Insurance Company, Dr. Baker signed a Subrogation Receipt which assigned to the Boston Insurance Company whatever rights he had against the assured of the Liberty Mutual Insurance Company. Thereafter, Boston Insurance Company notified Liberty Mutual of the subrogation and demanded reimbursement to the extent of its own outlay of $800.00. In compliance with this demand, Liberty Mutual, on January 11, 1968, paid to Boston Insurance Company by check the sum of $800.00. At no time was the Home Carpet Cleaning Company paid for its work in the Baker apartment. The court found against both Dr. Baker and Liberty Mutual in *quantum meruit* in the amount of $600.00.

At the close of the evidence, both Dr. Baker and Liberty Mutual filed numerous requests for rulings. None of these requests were relevant to the issues raised by the undisputed evidence. Because of this undisputed evidence, certain claims of Dr. Baker became immaterial. It is of little consequence whether Home Carpet Cleaning Company did the work in Dr. Baker's apartment at the request of Dr. Baker or at the request of Liberty Mutual. The fact remains that the Home Carpet Cleaning Company billed Liberty Mutual and Liberty Mutual elected to pay the bill and made no issue of the question

of its direct responsibility. If a fortuitous combination of circumstances placed the proceeds of the check of Liberty Mutual in the hands of the Boston Insurance Company, the fact remains that legally and morally the money belonged to the Home Carpet Cleaning Company. Because of this misadventure, money intended by Liberty Mutual to satisfy the claim of Home Carpet Cleaning Company for repairs and replacements made in Dr. Baker's apartment has not been received by the party entitled to receive it. As a result, Dr. Baker has had all his damage repaired and in addition holds $800.00 which he received from the Boston Insurance Company.

While counsel for Baker argues that his losses greatly exceeded the amount of $800.00, and that the money held by him has merely reimbursed him for his actual loss, the fact remains that Dr. Baker's proof of claim against Boston Insurance Company was only for $800.00. We have a right to assume that his own claim represents the true amount of his loss. Whatever confusion is found in this report is the consequence of the erroneous assumption by Liberty Mutual that Dr. Baker had paid for the repairs done in his apartment. Had they mailed the check directly to Home Carpet Cleaning Company we might have been spared the painful details of this litigation.

In these circumstances we find that the defendant, Dr. Baker, holds the sum of $800.00

which, in large part, morally and legally belongs to the plaintiff. In this action the court has found for the plaintiff in *quantum meruit,* in the amount of $600.00. To permit Dr. Baker to retain this windfall, by reason of the mistake of Liberty Mutual, would result in his unjust enrichment at the expense of the plaintiff. On the theory that he has received money intended for the discharge of an obligation owing to the plaintiff, he is accountable to the plaintiff in a count for money had and received to the use of the plaintiff. Of the fund in Dr. Baker's hands at least $600.00 represents funds to which he has no legal or moral right and in equity and good conscience, he has no right to retain it. *Moses* v. *McFerlan,* 2 Burr (Eng.) 1005, 1012. *Brook's Wharf and Bull Wharf* v. *Goodman,* (1937) 1 K.B. (Eng.) 534. *Appleton Bank* v. *McGilvray,* 4 Gray 518. *Indemnity Ins. Co.* v. *Paige,* 299 Mass. 523, 527.

The same equitable considerations which prompt us to sustain the finding against Dr. Baker suggest that we revise the court's finding with respect to Liberty Mutual. Having abided by the subrogation agreement of Dr. Baker by remitting the check in payment of the Baker claim to the Boston Insurance Company, it would be grossly unfair to make Liberty Mutual pay the same claim a second time. To allow the finding against Liberty Mutual to stand would be to invite further litigation in the attempt of parties to untangle the mess. In the

exercise of those equitable powers which this tribunal as a common law court possesses, it is in the interest of an expeditious determination of this controversy that the claim be restricted to the one person who in equity and good conscience should account for proceeds now in his possession. *Atkins* v. *Chilson*, 11 Met. 112.

For these reasons the finding against Liberty Mutual Insurance Company must be set aside and a finding entered on Count #4 for the defendant, Liberty Mutual Insurance Company. The finding against Dr. Baker on Count #3 in the amount of $600.00 is to stand. **So ordered.**